**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Judge Sidney Brooks**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Case |
| GARY LEE BRYAN | ) | No. 05-38302 SBB |
| Debtor | ) | |
| | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, Chapter 7 trustee, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 08-01102 SBB |
| GARY LEE BRYAN, JANEL K. BRYAN, | ) | |
| VECTRA BANK COLORADO, N.A., | ) | |
| AUTO SOURCE, LLC, and BRAD HUNT, | ) | |
| Trustee of the Bryan Family Trust, | ) | |
| Defendants. | ) | |

**APPEARANCES:**

David Wadsworth, Esq.
Sender & Wasserman, P.C.
1660 Lincoln Street, Suite 2200
Denver, CO 80264
COUNSEL FOR THE PLAINTIFF

Martin Bloom, Esq.
Neil A. Livingston, Esq.
Bloom Murr & Accomazzo, P.C.
410 Seventeenth Street, Suite 2400
Denver, CO 80202
COUNSEL FOR THE
DEFENDANT VECTRA BANK
COLORADO, N.A.

**ORDER ON MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT**
**(DOCKET #144)**

THIS MATTER comes before the Court for consideration of the Motion to Vacate Default and Default Judgment ("Motion to Vacate") filed by defendant, Vectra Bank Colorado, N.A. ("Vectra") on December 21, 2009,[1] and the Response thereto filed by M. Stephen Peters, Chapter 7 Trustee ("Plaintiff"), on January 5, 2010.[2] The Court heard oral argument on Vectra's Motion to Vacate and the Plaintiff's Response thereto on April 7, 2010.[3] The Court, having

---

[1]    Docket #144.

[2]    Docket #145.

[3]    The Minutes of Proceeding are docketed at Docket # 154.

reviewed the file, the pleadings before the Court, and having heard the oral argument of counsel, makes the following findings of fact, conclusions of law, and enters the following Order.

## I.    Issue Before the Court

The primary question posed is whether a May 21, 2008 default judgment entered against Vectra should be overturned because co-defendants faced with the same claims subsequently defeated those claims by summary judgment. This Court concludes that the default judgment should stand, for the reasons stated below. This is an issue of first impression in the bankruptcy courts of the 10th Circuit and one of considerable consequence in the management of adversary proceedings and the impact of final judgments on administration of bankruptcy cases.

## II.    Background Facts

On January 31, 2008, Plaintiff, M. Stephen Peters, as Chapter 7 Trustee for the Gary Lee Bryan bankruptcy estate filed a complaint commencing this adversary proceeding wherein he alleged 13 claims for relief against multiple defendants. Two of the claims for relief, the Eighth and Ninth Claims, were asserted against Vectra Bank Colorado, N.A. and debtor's spouse, Janel K. Bryan. The claims asserted against Vectra were brought under 11 U.S.C. § 548(a)(1)(A) and (B) for alleged fraudulent transfers. The Trustee was attempting to recover for the estate assets from the Debtor's self-settled trust which included the family's residence and miscellaneous personal property.

On May 5, 2008, the Trustee sought entry of default and default judgment against Vectra. The Court's records reflect that service of the summons and complaint was properly obtained upon Vectra on January 31, 2008. The Court further finds that there is no allegation in the pending Motion to Vacate that service was *not* properly made upon Vectra.

On May 21, 2008, this Court entered the Motion for Default Judgment against Vectra. The Judgment (a) granted the Trustee's Eighth Claim for Relief avoiding the transfers of Vectra's First Deed of Trust and Second Deed of Trust pursuant to 11 U.S.C. § 548(a)(1)(A); (b) granted Trustee's Ninth Claim for Relief avoiding the transfers of the Vectra First Deed of Trust and Second Deed of Trust pursuant to § 548(a)(1)(B); and (c) pursuant to § 550(a), the Trustee was awarded a judgment in the sum of $52,001.23 for the avoided transfers.

On December 21, 2009, over 20 months after the entry of the Default Judgment, Vectra brought the pending Motion to Vacate. The reason conveyed to the Court for the delay in responding to the Plaintiff's Complaint was that "due to Vectra's immediate sale of the loans to third parties, Vectra was unable to locate relevant loan documents or files at or about the time the Trustee attempted to serve Vectra."[4]

---

[4]        Motion to Vacate, p. 1-2.

After the Default Judgment, on December 5, 2008, defendants Gary Lee Bryan, Janel Bryan, AutoSource, LLC and Brad Hunt, as Trustee of the Bryan Family Trust, filed a motion for summary judgment seeking dismissal of the Trustee's Fourth through Eleventh Claims for Relief.  This Motion was initially denied by this Court.  On March 31, 2009, immediately prior to trial, Gary Lee Bryan, Janel Bryan, AutoSource, LLC and Brad Hunt, as Trustee of the Bryan Family Trust, filed a motion for reconsideration of the Order denying their Motion for Summary Judgment.  On May 1, 2009, this Court granted Gary Lee Bryan, Janel Bryan, AutoSource, LLC and Brad Hunt, as Trustee of the Bryan Family Trust Motion for Reconsideration, and dismissed claims Four through Eleven.  This Court found that the statute of limitations for claims Four through Eleven had expired and, therefore, § 548(a)(1)(A) and (B) claims were barred.

The remaining matters at trial included: the First claim, for which the Trustee sought declaratory relief that assets of the trust are property of the estate; the Second claim, for which the Trustee sought turnover of a real property lot (Debtor's residence) as property of the estate; a Third claim, for which the Trustee sought turnover of Range Rover sales proceeds as property of the estate; a Twelfth claim, for which the Trustee sought imposition of a constructive trust; and a Thirteenth claim, for which the Trustee sought authority to sell the turned over property pursuant to 11 U.S.C. § 363.

The Court found that the Debtor had engaged in fraudulent conduct, the family trust was a sham and the Defendant and his wife had secreted their assets in the trust to evade creditors' claims and rights.  The Court further concluded that the assets of the Trust were property of the estate, and thus, the real property, Range Rover proceeds, and certain personal property was to be turned over to the Trustee.  Moreover, the Trustee was given authority to sell the real property and certain personal property pursuant to 11 U.S.C. § 363.

Vectra filed the present Motion to Vacate asserting that because this Court dismissed the claims as to the co-defendants related to the Eighth and Ninth Claims for Relief sought as against Vectra, to which judgment had been granted, that this Court must vacate its Default Judgment. Vectra's written Motion to Vacate is brought solely under Fed.R.Bankr.P. 60(b)(4) and (6).

At a hearing on April 7, 2010, three and one-half months after filing its presently considered Motion to Vacate, Vectra asked this Court to consider new and additional arguments under Rule 60(b)(5) and also under the so-called *Frow* Doctrine, which is based on an 1872 Supreme Court decision, *Frow v. De La Vega*.[5]  Vectra further stated that it reserved the right to argue that Rule 60(b)(1) through (3) were also applicable.  These new arguments were a surprise to the Court and to Plaintiff's counsel and were not disclosed or argued until the hearing.

The Court took testimony from the Trustee at the hearing on April 7, 2010.  The Trustee testified that when he received the adverse ruling granting the Debtor's and his wife's Motion for Summary Judgment on Trustee's Claims 4-11 on May 1, 2009, he made a cost-benefit analysis

---

[5]        82 U.S. (15 Wall.) 552 (1872).

as to whether to appeal that decision in the context of the entire case. He stated that he knew he had a judgment against Vectra and expected Vectra to be solvent and able to pay the Judgment. On the other hand, the costs of the appeal as against the remaining defendants, the Debtor and his wife, would likely be expensive and not yield great benefit to the estate. The Trustee decided, then, not to appeal the adverse decision based on the statute of limitations question, and thereby waived his rights to appeal eight of the thirteen claims.

## III.   Standards

### A.   Rule 60(b)

The setting aside of judgments or orders, including default judgments, is governed by Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Bankruptcy Rule 9024.[6] Rule 60(b) strikes a delicate balance between two countervailing impulses of the judiciary: "The desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts."[7] Motions for relief under Rule 60(b) lie within the trial court's discretion,[8] which is generally regarded as a *broad* equitable discretion.[9]

---

[6]      A means to setting aside an entry of default is provided in Bankr. R. 7055(c), which makes Fed. R. Civ. P. 55 applicable in adversary proceedings. Rule 55(c) states that "for good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Good cause depends upon such factors as the willfulness of the default, the prejudice the adversary would incur were the default set aside, and the merits of the defense proffered. See *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1307 (2d Cir. 1996) (citing *Men's Sportswear, Inc. v. Sasson Jeans, Inc.* (*In Re Men's Sportswear, Inc.*), 834 F.2d 1134, 1138 (2d Cir. 1987)). Vectra has not asserted that there is "good cause" to set aside the entry of default, nor has it contended that its default was not willful. Indeed, the *only* defense it has offered for its notably tardy objection to the default judgment is that it was "unable to locate relevant loan documents or files" when it was served with the complaint. Moreover, the Trustee has testified that his appeal decision was based upon the default judgment, and that the estate would be adversely affected by overturning the judgment. As such, the Court could not find good cause to set aside the entry of default pursuant to Rule 7055(c). Moreover, in this instance in which default *judgment* has been entered against Vectra, Vectra would need to show Rule 60(b) standards have been met to overturn that judgment. See Editors' Comment, Norton Bankruptcy Rules, Rule 7055 p. 565 (2009-10 ed.) ("Only good cause need be shown for setting aside a default, while the requirements of Federal Rule 60(b) must be met in order to set aside a default judgment.").

[7]      *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (internal quotations omitted).

[8]      *Otoe County Nat'l Bank v. W & P Trucking, Inc.*, 754 F.2d 881, 883 (10th Cir. 1985).

[9]      *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970). Accord *In re Chalasani*, 92 F.3d at 1307 (citing *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984); *Davis v. Musler*, 713 F.2d 907, 912 (2d Cir. 1983)).

The 10th Circuit has held that Rule 60(b) relief is extraordinary and should only be granted in exceptional circumstances.[10]  However, additional considerations come into play when the 60(b) motion concerns a default judgment.  The 10th Circuit has noted in particular:

"Strong policies favor resolution of disputes on their merits: The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection. We do not favor default judgments because the court's power is used to enter and enforce judgments regardless of the merits of the case, purely as a penalty for delays in filing or other procedural error. However, a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.  The threat of judgment by default serves as an incentive to meet this standard."[11]

A motion to vacate a default judgment brought under Rule 60(b)(1), 60(b)(2), or 60(b)(3) must be made within a reasonable time and not more than one year after the  judgment.[12]  A motion under Rule 60(b)(4), 60(b)(5), or 60(b)(6) has no such one-year cap, but must nevertheless be made "within a reasonable time."[13]  In determining what constitutes a "reasonable time," the court examines "the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties."[14]  Insufficiently explained delays lasting numerous months from the time of a default judgment until the submission of a motion to vacate a default judgment have consistently prompted rejection of that motion.[15]

---

[10]     *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005).

[11]     *Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) (citations omitted).

[12]     Fed. R. Civ. P. 60(b). A Rule 60(b)(1),(2), or (3) "motion is not timely merely because it has been filed within one year of the judgment." *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990).

[13]     Fed. R. Civ. P. 60(c).

[14]     *Mullin v. High Mt.*, 2006 U.S. App. LEXIS 14301, **8 (10th Cir. 2006) (unpublished opinion) (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

[15]     *See, e.g.*, *United States v. Lyman*, 1998 U.S. App. LEXIS 32232, *15-16 (10th Cir. 1998) (unpublished opinion) (rejecting motion for vacating default judgment after eight month delay in filing when pro se defendant had sufficient notice before default judgment); *Security Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067-68 (10th Cir. 1980) (upholding denial of a Rule 60(b) motion on the ground that it was untimely because of unexplained 115-day delay between date of judgment and date motion filed); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610-11 (7th Cir. 1986) (holding that delay of four months after plaintiff learned of dismissal was unreasonable under the circumstances); *Central Operating Co. v. Utility Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974) (finding no abuse of discretion in denying relief from judgment when defendants waited almost

## B.       The *Frow* Doctrine

A common law doctrine that has developed over a century as a *seemingly* independent mechanism from Rule 60(b) for setting aside default judgments is the so-called Frow doctrine, based on an 1872 Supreme Court case, *Frow v. De La Vega*.  From this case was derived the rule that when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated against all of the defendants.[16] The Supreme Court in *Frow* explained the motivation behind this rule as follows:

> The question is, whether the court, in such case as this, could make a final decree against one defendant whilst the cause was proceeding undetermined against the others. If it could be done, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants, and another decree disaffirming the said charge, declaring it to be unfounded and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. . . . Such a state of things is unseemly and absurd, as well as unauthorized by law.[17]

*Frow* has been interpreted differently by various courts and commentators.  At least one Circuit and one state Supreme Court have indicated that they believe *Frow* to have been superceded by F.R.C.P. 54(b).[18]  Some have read *Frow* narrowly, applicable only in those circumstances "where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable."[19]  This judicial view limits

---

four months after receiving notice of default judgments before filing motions  to vacate and provided no satisfactory explanation for delay); *Murphy v. Curran*, 1995 Mass. App. Div. LEXIS 44, *4-5 (Mass. Ct. App. 1995) (denying motion to vacate default judgment filed twenty-two months after entry of judgment).  These cases, however, do not involve circumstances where the specter of *Frow* liability arises.  This Court addresses the issue of the *Frow* doctrine below.

[16]       *See* 10 Wright, Miller & Kane, Federal Practice & Procedure § 2690 at 73 (3d ed. 1998).

[17]       82 U.S. (15 Wall) at 553.

[18]       *Martin v. Coughlin*, 895 F. Supp. 39, 43 (N.D.N.Y. 1995) ("[T]he Second Circuit has held it is 'most unlikely that Frow retains any force subsequent to the adoption of Rule 54(b).'") (quoting *International Controls Corp. v. Vesco*, 535 F.2d 742, 746 n. 4 (2d Cir. 1976)); *United Salt Corp. v. McKee*, 628 P.2d 310, 312 (N.M. 1981) (same).

[19]       6 Moore's Federal Practice para. 55.06 at 55.39 (2d Ed. 1988). Accord 10 James W. Moore, Moore's Federal Practice § 55.25 at 55-45 and 55-46 (3d ed. 1999). According to Moore, "Frow . . . does not apply to cases involving the joint and several liability of multiple defendants for damages, because in such a case the liability of each defendant is not necessarily dependent upon the liability of any other defendant, and plaintiff may be made whole by a full recovery from any defendant." *Id.* at 55-46.  *See also McMillian/McMillian,Inc. v. Monticello Ins. Co., 116 F.3d 319* (8th Cir. 1997) (finding Frow inapplicable where defendants had closely related interests but were not alleged to be jointly liable); *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257 (7th Cir. 1980); *Fubon Ins. v. China Express Co.*, 2004 U.S. Dist. LEXIS 2475, *17-18 (S.D.N.Y. 2004) ("The Frow  holding has been

the Frow doctrine to *only* jointly liable co-defendants, prohibiting application of the doctrine even in cases of jointly-and-severally liable co-defendants.[20]  Others have read *Frow* broadly, holding that when defendants are similarly situated, though not jointly liable, judgment should not be entered against a defaulting defendant if another defendant prevails on merits.[21]  Some have taken a middle-of-the-road view, suggesting that *Frow*'s application may be limited to situations in which the nature of the relief demanded makes it impossible to grant relief against one defendant without also granting relief against others.[22]

The 10th Circuit has not explicitly addressed *Frow*'s breadth of applicability other than to suggest that *Frow* is applicable in cases involving joint and several liability.[23]  Additional

---

narrowly construed to prohibit entry of a default judgment 'against one of several defendants (1) where the theory of recovery is one of true joint liability, such that, as matter of law, no one defendant may be liable unless all defendants are liable, or (2) where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant.'" (citations omitted); *In re Ridgemont Apartment Assoc., Ltd.*, 1990 Bankr. LEXIS 1100 (Bankr. N.D. Ga. 1990) (default judgment overturned where multiple parties were jointly liable on a bond and default would have caused one party to bear liability for all the parties).

[20]   *See Westinghouse Elec. Corp. v. Rio Algom Ltd.*, 617 F.2d 1248, 1258 (7th Cir. 1980) ("To the extent that [Frow] holds that there cannot be inconsistent adjudications as to joint liability or as to a single res in controversy this ancient equity case remains good law. But to apply Frow to a claim of joint and several liability is to apply that venerable case to a context for which it was never intended . . . .") (footnotes omitted); *Neilson v. Straight-Out Promotions, LLC (In re Tyson)*, 2007 Bankr. LEXIS 2832, *17 (S.D.N.Y. 2007) (unpublished opinion) ("It appears established that since the amendments to F. R. Civ. P. 54(b) in 1961, the rule in Frow has been limited to situations 'where the liability of one defendant necessarily depends upon the liability of the others.'") (quoting *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746-47, n.4 (2d Cir. 1976)).

[21]   *Gulf Coast Fans v. Midwest Elec. Importers*, 740 F.2d 1499 (11th Cir. 1984).  See also *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151 (3d Cir. 1986) (holding that Frow stands for proposition that if facts are proved at trial which exonerate answering defendants and that as matter of logic preclude liability of defaulting defendant, plaintiff cannot obtain judgment against defaulting defendant); *Federal Deposit Ins. Corp. v. Manatt*,723 F. Supp. 99 (E.D. Ark. 1989) (overturning default judgment where joint and several liability existed between defendants); *All Points Capital Corp. v. Meyer (In re Meyer)*, 373 B.R. 84, 92 (B.A.P. 9th Cir. 2007) ("[I]t is an abuse of discretion to enter default judgments that are inconsistent with decisions as to other defendants.").  *Accord* Wright et. al, Federal Practice & Procedure § 2690 (stating that the Frow doctrine applies where liability is joint, joint and several, and even probably can be extended to situations in which several defendants have closely related defenses.)

[22]   *See, e.g.*, *Carter v. District of Columbia*, 795 F.2d 116, 137 (D.C. Cir. 1986) ("The holding in Frow did not 'rest solely on the fact that the liability alleged was joint'; more importantly, Frow responded to the reality that '[u]nder plaintiff's demand for relief, it was necessary that judgment be entered against all of the defendants in order to be effective.'") (citations omitted).

[23]   *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) (stating that "whether or not *Frow* is controlling," there should be a rule that damage awards will be consistent where tortfeasors are jointly and severally liable); *Travelers Cas. & Sur. Co. of Am. v. Richard E. Gash Electric Co.*, 2009 U.S. Dist. LEXIS 18169, *9-10 and n.4 (D.Colo. 2009) (stating that the 10th Circuit in *Hunt* extended *Frow* to apply to joint-and-several liability and to contractual disputes).

comments made in passing indicate that the 10th Circuit might favor an even broader *Frow* approach, although it has not held such in a published opinion.[24]

     *Frow* has only rarely been reconciled with the later-adopted Federal Rule of Civil Procedure 60(b), which governs all relief from final judgment.[25] Thus, there does not appear to be explicit precedent for restricting the time to object to a default judgment under the Frow doctrine. Nevertheless, the clear import of Rule 60(b) is that *any* ground argued for the reversal of a default judgment must meet Rule 60's standards.[26] It is unclear under which of Rule 60(b)'s six subsections a *Frow* argument falls - that is, whether a motion to reverse a default judgment on *Frow* grounds is, for instance, a Rule 60(b)(1) argument (mistake or excusable neglect), a Rule 60(b)(4) argument (voidness), or simply a Rule 60(b)(6) argument (any other reason that justifies relief).[27] Regardless of which Rule 60(b) subsection may subsume *Frow*, a *Frow*

---

[24]     *See Hutchinson v. Pfeil*, 105 F.3d 566, 571 n. 4 (10th Cir. 1997) (suggesting that because claims were "similar" prayers for injunctive relief, the dismissal of claims against six defendants' implied that the "most efficient approach" would be to do likewise for a defaulting defendant); *Wilcox v. Raintree Inns of Am.*, 1996 U.S. App. LEXIS 1501, *7-*8 (10th Cir. 1996) (unpublished opinion) ("We do not, however, believe that the applicability of the *Frow* rule hinges on whether the defendants are jointly and severally liable. The *Frow* rule is also applicable in situations where multiple defendants have closely related defenses."); *DC Aviation, LLC v. Avbase Flight Servs., LLC*, 2007 U.S. Dist. LEXIS 66360, *4 (D. Colo. 2007) (refusing to enter a default judgment where alleged facts underlying many of plaintiffs' claims "significantly overlap").

[25]     *See Samar Fashions, Inc. v. Alexander Bros. Co.*, 1985 U.S. Dist. LEXIS 19336, *2-3 (E.D. Pa. 1985) (indicating that party "seeks to have the default judgment set aside pursuant to F.R.C.P. 60(b)" and "cites *Frow v. DeLaVega*" as the grounds for the motion).

[26]     Under the original rules of civil procedure, a Rule 60 motion to reverse any decision had to be brought in a reasonable time, but "in no case" later than 6 months after the decision. James W.M. Moore & Elizabeth B.A. Rogers, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623, 629, 632 (1945-46). Commentators noted that there was a distinction between "extrinsic" and "intrinsic" fraud, mistake, misrepresentation, or misconduct that occasionally permitted some issues to be re-litigated even after the six month window, but the "extrinsic" circumstances that permitted such re-litigation occurred quite seldom and the leading commentators of the time proposed that the distinction between "intrinsic" and "extrinsic" events be abolished and a 1-year non-negotiable cap on reversing judgments be instituted. *Id.* at 688, 693 n. 272. Indeed, in one leading case in which a state senator had delayed objection to a judgment for 2.5 years as a consequence of his official obligations, a federal court held that there were *no* grounds sufficient in that case to overcome the six-month cap on reversal of judgment. *Id.* at 637. The time period for a Rule 60(b) reversal has obviously been relaxed subsequently to a period of "reasonable time." However, the clear import of earlier renditions of the Rule was the Rule 60(b) did not contemplate that *Frow* or any other common law doctrine was a sufficient ground for ignoring the hard-capped six-month statute of limitations - only "extrinsic" instances of fraud, misconduct, misrepresentation, or mistake might rarely be.

[27]     At a minimum, a *Frow* argument must qualify as a Rule 60(b)(6) argument, which is a catch-all provision for any reason to reverse a final judgment that does not meet the other standards of Rule 60(b).

argument must be brought within a "reasonable time" after a default judgment, just like any other Rule 60(b) ground.[28]

## IV.   Discussion

Vectra's written Motion to Vacate cited two grounds on which to reverse the default judgment: Rule 60(b)(4) and 60(b)(6).  Three months later in oral argument, Vectra's counsel announced for the first time that Rule 60(b)(5) might also be a ground for vacating the judgment, and that he was reserving the right to later contend that 60(b)(1), (2), and/or (3) are grounds for overturning the judgment.[29]

### A.       Rules 60(b)(1), (2), and (3)

As a preliminary matter, this Court notes that Vectra has not articulated any reason, or set out any justification, for why Rules 60(b)(1), (2), or (3) should apply to overturn the default judgment.  Moreover, all three of these 60(b) subsections have a one-year timeliness requirement under 60(c).  The default judgment order entered on May 21, 2008.  The first time Vectra's counsel mentioned these potential grounds for overturning judgment was at the April 7, 2010 hearing.  As such, Vectra is time-barred under Rule 60(c) from raising theories of reversal based on 60(b)(1), (2), or (3).

### B.       Rule 60(b)(4)

One of Vectra's primary arguments for default judgment reversal is a Rule 60(b)(4) claim of voidness.  In a recent case, the Supreme Court has noted that even legal error that might have been successfully appealed is not a basis for setting aside an order or judgment as void under Rule 60(b)(4).[30]  Thus, to the extent that Vectra is raising a 60(b)(4) claim as a proxy for its *Frow* argument - in effect, contending that this Court committed legal error amounting to voidness of the default judgment by failing to follow *Frow* - the Supreme Court has dismissed this argument.  "Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that

---

[28]       *See* F.R.C.P. 60(c). If it is ultimately determined that a Frow argument qualifies as a Rule 60(b)(1), (2), or (3) qualification for overturning a default judgment, then the Frow argument must also be brought within one year of the entry of default judgment.

[29]       The Court expressed both its surprise and dismay at Vectra's counsel's raising new legal theories and new arguments only at the hearing.  The Court believes that due to the surprise and inappropriate procedure employed by counsel, the arguments made under Rule 60(b)(1), (2), (3) and (5) should be stricken.  Nonetheless, the Court addresses the arguments because on their merits, they are not valid and must fail, in any event.

[30]       *United Student Aid Funds, Inc. v. Espinosa*, 2010 WL 1027825, *5 (Mar. 23, 2010).

deprives a party of notice or the opportunity to be heard."[31] Vectra contends in its written Motion to Vacate that the default judgment is void under 60(b)(4) because the Court granted summary judgment to Vectra's co-defendants. The Motion for Summary Judgment successfully asserted that the statute of limitations, pursuant to 11 U.S.C. § 546(b), had expired for the Trustee's avoidance actions. The elapse of the statute of limitations, Vectra believes, means that the Court lacked subject matter jurisdiction over the co-defendants, as well as Vectra. However, Colorado federal law is clear that the statute of limitations pursuant to 11 U.S.C. § 546(b) is not a jurisdictional matter.[32] As such, there is no jurisdictional defect with respect to the default judgment.

As for the "lack of due process" prong of the Rule 60(b)(4) test, Vectra has not claimed lack of due process, notice, or service of the Trustee's complaint, filed January 31, 2008. Moreover, Vectra had four months within which to file its answer or otherwise plead before the Trustee took a default judgment, but failed to do so. And further, Vectra did not appeal the entry of default judgment and did not file its motion to vacate until nineteen months after entry of default. Accordingly, the judgment is not void under Rule 60(b)(4).

## C.    Rule 60(b)(5)

Vectra has also raised for the first time at oral argument that the default judgment should be overturned on Rule 60(b)(5) grounds. This Court does not concur. The first first reason a 60(b)(5) claim could succeed is that "the judgment has been satisfied, released, or discharged." None of these events have occurred with respect to this default judgment. A second reason for reversing the default judgment under 60(b)(5) is if the default judgment "is based on an earlier judgment that has been reversed or vacated." No such earlier judgment exists in this case. Finally, the default judgment could be overturned if "applying it prospectively is no longer equitable." The plausible reason that this clause might be applicable is if the Frow doctrine is brought under 60(b)(5). However, for reasons explained below, the Frow doctrine is not binding, particularly after so much time has elapsed, and thus it would not be "inequitable" to continue to uphold the default judgment. Thus, there are no grounds under 60(b)(5) for which the default judgment could be overturned.[33]

---

[31]    *Id.* at *6. The "certain type" of jurisdictional error is described as "the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* (citations omitted). Due process "requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at *7 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[32]    *Amazing Enters. v. Jobin (In re M & L Bus. Machines, Inc.)*, 153 B.R. 308, 311 (D. Colo. 1993) (noting that "the limitations period established in 546 is not jurisdictional, can be waived, and is subject to the doctrines of equitable estoppel and equitable tolling") (citations omitted).

[33]    Moreover, at the conclusion of the April 7, 2010 evidentiary hearing, the Court ruled that it would not permit the addition of this Rule 60(b)(5) ground for relief and the Court held that this ground for relief was brought too late and was improper. Docket # 154.

### D.      Rule 60(b)(6)

Vectra alternatively contends that the default judgment should be set aside pursuant to Rule 60(b)(6).  In its written Motion to Vacate, Vectra explained that "it would be manifestly inequitable to hold Vectra liable upon a judgment entered by default when the claims underlying that judgment were subsequently dismissed based on the statute of limitations."[34]  At the later oral hearing, Vectra's counsel specifically raised the Frow doctrine.  There are several problems with allowing a Rule 60(b)(6) claim (or a *Frow* claim brought under Rule 60(b)(6)) to succeed in this instance.

First, the Tenth Circuit has been clear that a court "may grant a Rule 60(b)(6) motion only in 'extraordinary circumstances' and only when such action is necessary to accomplish justice."[35]  Here, the circumstances are not extraordinary.  Vectra, by its own admission, has offered no legitimate justification for why it failed for nineteen months to respond to the May 2008 default judgment. Nor has Vectra suggested that there was anything inadequate about the notice of the complaint.

Second, *Frow*, as applied in published 10th Circuit decisions, is limited to matters involving co-defendants who share joint-and-several or joint liability.  The preference avoidance action undertaken against Vectra, however, did not involve any form of joint liability with Vectra's co-defendants.  Instead, the various defendants had only *several* liability for their prospective preferences.  Thus far, no published case in the 10th Circuit has extended the *Frow* doctrine to instances of several liability.[36]  This Court declines to be the first to do so.

The Court notes that the invocation of *Frow* is a rarely invoked proposal in bankruptcy courts.  To allow *Frow* to become a choice tool in the arsenal of  defaulting creditors - who are not uncommon in bankruptcy litigation - could threaten to seriously upend the orderly procession of bankruptcy litigation, which requires timely, reliable assessments and determinations of creditors', debtors', and the Trustee's interests and rights.  Moreover, to establish a precedent that all default judgments can be set aside if co-defendants successfully defend against similar claims - no matter how delayed or tardy such a request is made - is a recipe for great uncertainty and chaos in the administration of bankruptcy cases.

### E.      Rule 60(c)

---

[34]      Motion to Vacate, p. 3.

[35]      *State Bank of Southern Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1080 (10th Cir. 1996) (quoting *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 729 (10th Cir. 1993)).

[36]      This Court is not suggesting that the 10th Circuit has *ruled out* a broader reading of *Frow*, but only that it has not yet formally held as much.

Lastly, Rule 60(c) requires that any of these myriad arguments that Vectra is advancing must be made within a "reasonable time" after the entry of default judgment. It can hardly be said that this has occurred. The default judgment was entered on May 21, 2008, and the Motion to Vacate that judgment was filed on December 21, 2009, exactly nineteen months later. The Court and other parties have an interest in the finality of this judgment. The parties in this case - particularly the Trustee, who has testified that he forfeited appeals against the co-defendants based in part on an assurance of default judgment - would be prejudiced by a reversal of this judgment. Vectra has offered no good justification for the delay in objecting to the default judgment. Moreover, none of the grounds upon which Vectra is relying to overturn the default judgment required such great delay to discover.

Finally, the Court notes that bankruptcy proceedings are a form of "real-time" litigation as contrasted with "autopsy" litigation that more commonly occurs in most trial courts and at the appellate level. Bankruptcy cases involve real people and entities in financial distress undergoing financial and organizational reorganization in real time. They are unlike most other litigation where past events and activities are examined and parties' past conduct and communication is probed with little immediate and dispositive impact on the parties involved. Most litigation and dispute resolution is retrospective; most bankruptcy litigation and dispute resolution is real-time.

Bankruptcy case administration and dispute resolution decisions must usually be made rapidly, and with some certainty and reliable finality. The effect of being able to undo orders through unusual doctrinal usage - such as applying an ancient rule like *Frow* to undo a default judgment upon which the parties have significantly relied and upon which they have relied for an appreciable length of time - would be considerably damaging to the orderly process of preserving the estate and the debtor's and other creditors' rights. Moreover, common allowance of rules like *Frow* in bankruptcy proceedings would promote questionable tactics such as allowing a creditor in multi-defendant adversarial proceedings who does not wish to bear litigation expenses to allow a default judgment to enter, to then lie in the reeds to see if other parties are able to successfully fend off the same claims, and if those parties are successful, then invoking *Frow* or another similar rule to reverse the default judgment.

## V.   Conclusion and Order

Vectra is attempting to reverse a nearly two-year old default judgment to the clear and substantial detriment of the estate, creditors, the Trustee, and other parties. The Court notes that in this attempt, Vectra has demonstrated a pattern of procrastination, tardy pleading, sleeping on one's rights, delay, raising issues in serial fashion, and invoking surprise. Vectra has furthermore acknowledged that it received adequate notice in this case, and simply chose not to respond because it could not locate the relevant loan documents and files. It then dallied for nineteen months after judgment before bringing this present Motion to Vacate. The function of Rule 60(b) is to balance the desire of a court to decide cases with finality against a litigants'

rights for a full and fair opportunity to litigate its case.[37]  Here, Vectra had every opportunity and notice to defend its rights, and chose to disregard those opportunities for far too long to now reverse this Court's judgment.

IT IS THEREFORE ORDERED that the Defendant's Motion to Vacate Default and Default Judgment is DENIED.

Dated this 28th day of April, 2010.

BY THE COURT:

Sidney B. Brooks,
United States Bankruptcy Judge

---

[37]     *Espinosa*, 2010 WL 1027825 at *8.